## Case No. 13,411.

STEVENS et al. v. The S. W. DOWNS & The STORM.

[Newb. 458.] [1]

District Court, E. D. Louisiana. Feb., 1854.

SALVAGE—TOWAGE—TO ESCAPE FIRE—ESTOPPEL—DAMAGE BY TOWING STEAMER.

1. A steamboat for services performed in towing other steamboats from positions where they were moored at the wharf, and thus preventing them from coming in contact with a steamboat on fire descending the river, is entitled to a compensation for towage, and not to a compensation in the nature of salvage.

2. A party who in view of the danger with which his boat is threatened by the approach of a steamboat on fire, calls for the assistance of another steamboat to remove his property from its perilous situation, will not be allowed to plead exemption from liability to pay for the services demanded, upon the ground that his property would have been safe, if left in its original position.

3. If a steamboat, while extricating another steamboat from her perilous situation, during the excitement and confusion incident to a threatened conflagration, should unavoidably injure the latter, she will not be held responsible for the injury; and a reconventional demand in the nature of a cross libel, claiming compensation for such an injury, will be dismissed.

[This was a libel for salvage by Hiram E. Stevens and owners of the steamboat Eliza against the steamboats. S. W. Downs and Storm and cargo of the Storm.]

McCALEB, District Judge. The libelants claim a salvage compensation for having taken the steamboats S. W. Downs and Storm from their landing place, at the wharf, and thus saving them from being burnt, on the 15th of February, 1853. It seems that between the hours of 10 and 11 o'clock on that day the steamboat John Swasey took fire while descending the river nearly opposite Lafayette, and drifted down the current. While enveloped in flames she passed very near the sterns of the many steamboats then lying moored at the wharf near the foot of Canal and Custom-house streets. Great consternation and alarm was created among those having charge of the boats, and the utmost anxiety was manifested to prevent them from coming in contact with the burning boat. The steamboat Eliza was about to leave port on her voyage up the river, and had already raised steam. She first towed out the steamboat Eclipse, and afterwards performed the same service for the Downs

[1] [Reported by John S. Newberry, Esq.]

and the Storm, at the request of those having charge of those boats at the time.

While I do not feel myself called upon to decide that this is not a case of marine salvage, I have no hesitation in saying that it is a case where the services performed should entitle the libelants to little more than would be allowed upon a quantum meruit, for work and labor performed. A great deal of testimony has been taken by the respondents, to show that the boats which were towed out by the Eliza were not in danger, and would not have been burnt if they had been left in their original position at the wharf; and yet it has been clearly proven, that the bells of these boats were rung and the assistance of the Eliza expressly solicited. Much of this evidence, therefore, directly contradicts the acts and declarations of those who had charge of the boats while the John Swasey was on fire. That those who asked for assistance at the time, believed they needed it, can hardly be a matter of doubt. And while I am satisfied that the Eliza should be compensated for the trouble and delay to which she was subjected, I can see no ground for such an extravagant allowance, as seems to have been in the contemplation of the proctor who argued the cause in behalf of the libelants. I think the Eliza is entitled to a liberal compensation in the nature of towage. It has been shown that substantially the same services were rendered by another boat for a compensation upon this principle. I would certainly offer to steamboats sufficient inducement to render assistance under such circumstances; but I do not deem it either safe or proper to hold out expectations of an extravagant remuneration for services which should be dictated by generosity, and which are usually prompted by the spirit of comity prevailing among the commanders of steamboats. The services were performed in daylight, and I am satisfied that while the Eliza perhaps incurred some risk, she was subjected to little or no actual danger. For the services she rendered to the Downs, she is, I think, entitled to receive $100, and for her services to the Storm, she should receive $75, and for these sums I shall order judgment to be given in favor of the libelants, with costs.

The claim in the nature of a reconventional demand asserted by way of cross libel by the respondents, must be rejected. They were certainly benefited by the assistance so seasonably rendered by the Eliza, and it is now entirely too late to speculate upon the chances of escape from the peril to which they certainly believed their property was exposed, when they demanded that aid from the Eliza, which seems to have been promptly and cheerfully given. The injuries complained of, were, in my judgment, the result of unavoidable accident, attributable, doubtless, in a great measure, to the hasty and imperfect manner in which, amid the confusion of the moment, the boats were fastened together; and for which those on board of both boats

were responsible. I am satisfied from the testimony of the pilot of the Eliza, that it was impossible during the violence of the gale which was prevailing at the time, to land the boat in tow. The order to cast her loose, seems to have been dictated by overruling necessity, and it does not appear that any objection was made to it at the time, by the officers of the Downs. If, under all the circumstances of the case, the libelants were not successful in towing the boats from their position at the wharf to a place of safety without causing some injury, it should not be imputed to them as a fault; and the respondents should regard the injury complained of, as a part of the price of the timely rescue of their property from the danger of far greater injury to which it was exposed. Upon a full and fair consideration of all the facts and circumstances of this case, I cannot adopt the conclusion to which the argument of the proctor for the respondents would lead; that the Eliza after having performed the service alluded to at the express solicitation of those on board the Downs and the Storm, should now, not only be denied a reasonable compensation for those services, but condemned to pay the damage sustained from causes beyond her control.

The reconventional demand will therefore be dismissed, and judgment entered in favor of the libelants for the sums already mentioned, with costs in the proportion of four-sevenths against the S. W. Downs, and three-sevenths against the Storm and cargo, or against the claimants and sureties on the bonds executed and returned into court on the release of said boats respectively. The costs to be taxed by the clerk.